IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| DONIS LEMOND DENBY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 7:13-CV-140-O-KA |
| | § | |
| TOMMY NORWOOD, *et al.*, | § | |
| | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION

Plaintiff filed this civil rights action pursuant to 42 U.S.C. §1983, and was granted permission to proceed *in forma pauperis* by the District Court. This matter has been referred to me for hearing if necessary, and findings of fact, conclusions of law, and recommendation for disposition. ECF 12.

Plaintiff's Claims

Plaintiff Denby is an inmate currently in the custody of TDCJ and currently resides at the Coffield Unit in Tennessee Colony, Texas. The relevant facts of this complaint took place at the Clement and Allred Units. Proceeding *pro se* and *in forma pauperis* Denby filed his complaint pursuant to 42 U.S.C. § 1983 against five individual defendants, Eastridge, Tucker, and White, Saffirs and Norwood, alleging they violated his Eighth Amendment right to be free from cruel and unusual punishment by depriving him of medical treatment for his serious medical needs. *See generally ECF 1 and 10*. Plaintiff claims he was sexually assaulted back in 2011 and received rectal injuries that have not been treated. *Id*. For those injuries Plaintiff seeks compensatory and punitive damages.

Denby's specific medical care denial claim is:

"...[I] was denied medical care for a serious medical need, the medication

1

prescribed was inadequate, combined, the failer (sic) to address and treat the serious conditions of internal rectal bleeding and swelling and the inadequate medication, caused my condition to wrosen (sic) and compund, Plaintiff sustained infections due to internal tarring (sic), plaintiff suffered from a prolased (sic) rectum where his rectum became so swollen it literally pertruded (sic) inside out causing unbarable (sic) pain, plaintiff developed internal hemrrhoids (sic), and scar tissue that all together effects plaintiff's ability to have bowel movements without serious pain, recurred taring (sic) and bleeding, if treated in a timely and adequate manner these conditions could have been avoided and properly treated."[1]

The Martinez Report

Following a preliminary review of Plaintiff's Complaint and More Definite Statement, I ordered an investigation and submission of a Martinez Report.[2] Following an extension of the filing time, the Attorney General filed the Martinez Report. It was placed under court seal (ECF 17) because Plaintiff's confidential medical records which are protected by the Health Insurance Portability and Accountability Act of 1996 Privacy Rule (HIPAA), 45 CFR parts 160-164 are included as exhibits and discussed throughout the report. ECF 19. The record reflects that a copy of a redacted version of the Martinez Report was subsequently delivered to the Plaintiff on February 5, 2016. No response to that report has been filed.

In compliance with the court's Martinez Report Order the Attorney General submitted the following materials with the report:

Exhibit A:   Affidavit of Benjamin J. Leeah, M.D. explaining time line of relevant medical events
Exhibit B:   Relevant portions of Denby's TDCJ Health Services Medical Records with supporting business records affidavit
Exhibit C:   Relevant portions of Denby's Grievances with supporting business records affidavit
Exhibit D:   Emergency Action Center Report with supporting business records affidavit

---

[1]   From Plaintiff's More Definite Statement (ECF 10, p. 4, ¶ 2).

[2]   ECF 13, *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Parker v. Carpenter*, 978 F.2d 190, 192 n.2 (5th Cir. 1992); *Graves v. Hampton*, 1 F.3d 315, 319 n. 20 (5th Cir. 1993).

| | |
|---|---|
| Exhibit E: | Relevant portions of Denby's Disciplinary records with supporting business records affidavit |
| Exhibit F: | Texas Tech University Health Sciences Center Position Description for Tommy Norwood |
| Exhibit G: | Relevant portions of Denby's Offender Protection Investigations with supporting business record affidavit |
| Exhibit H: | Time line of relevant facts and events |

State's Position

Following a detailed summary of the Plaintiff's allegations concerning the involvement of the four named defendants in respect to Denby's medical care or lack thereof, the Attorney General asserted the following defensive arguments:

1. Eleventh Amendment Sovereign Immunity for all Defendants in their official capacity.
2. Qualified Immunity on behalf of all Defendants in their personal capacity
3. Lack of Personal Involvement or Supervisory Liability on behalf of Norwood or Tucker
4. Failure to Exhaust State Remedies on behalf of Eastridge, Tucker and White; and,
5. Lack of 'Conscious Indifference' on behalf of all Defendants.

Standard as to Sufficiency of Pro Se Pleading

Since this action was filed pursuant to Plaintiff's request to proceed *in forma pauperis*, Plaintiff's complaint is subject to review under §1915(e)(2) and to dismissal under Subsection (B) if the court determines that the actions are frivolous or fail to state a claim on which relief may be granted. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The district court is authorized to consider the sufficiency of the complaint under Federal Rule of Civil Procedure 12(b)(6), on its own initiative. *Guthrie v. Tifco Indus.*, 941 F. 2d 374, 379 (5th Cir. 1991). In making a §1915(e)(2) determination, the Court must "accept all well pleaded averments as true and view them in the light most favorable to the plaintiff." *Rankin v. City of Wichita Falls*, 762 F. 2d 444, 446 (5th Cir. 1985).

Notwithstanding the submission of the Martinez Report, we are still at the pleading

stage in this case. The lead case as to the measure of a pleading so as to avoid dismissal under Rule 12(b)(6) for failure to state a claim is *Conley v. Gibson*, 355 U. S. 41 (1957) wherein the Court established the "no set of facts" standard. The lead case as to the standard for measure of a *pro se* pleading is *Haines v. Kerner*, 404 U. S. 519, 520 (1972) wherein the Court stated:

> "Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Dioguardi v. Durning*, 139 F.2d 774 (CA2 1944)."

Later, this *Coney/Haines* "no set of facts" standard was redefined in *Bell Atlantic Corp v. Twombly*, 550 U. S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) to a "plausible on its face with enough heft to show the plaintiff is entitled to relief" standard. It is to this latter standard that Denby's pleadings to this stage are to be tested.

### Sovereign Immunity/Official Capacity

This issue of law was correctly briefed and summarized by the Attorney General in the Report. To the extent Plaintiff is suing the defendants in their *official capacities* for retrospective relief in the nature of monetary damages as distinguished from prospective relief such as an injunction, the defendants are entitled to Eleventh Amendment immunity. While a monetary claim against a state official in his individual capacity does not implicate the Eleventh Amendment, a claim for monetary relief against a state official in an official capacity is tantamount to a claim against the state and is, therefore, immunized by the Eleventh Amendment. The Eleventh Amendment bars suit in federal court against a state, or one of its agencies or departments, for retrospective relief such as monetary damages. *Will v. Michigan Dep't of St. Police*, 491 U.S. 58 (1989). Accordingly, I recommend to the District Court that Plaintiff's claims against each of the named defendants in their

4

respective *official capacities* for monetary compensation be DISMISSED with prejudice.

## AEDPA and Statute of Limitations

Petitioner Denby filed his original complaint in this court on November 7, 2013. It was signed November 3, 1013, which for purposes of the following analysis shall be deemed the filing date. For the purposes of the application of statutes of limitations, in *Wilson v. Garcia,* 471 U. S. 261 (1985) the Supreme Court held that all § 1983 actions should be characterized as actions for personal injuries. As a result, the federal courts must adopt the state limitations period that is applicable to personal injury actions. In Texas that statute is § 16.003(a) of the Texas Civil Practices and Remedies Code that provides for a limitations period of two years for personal injury actions. *Shelby v. City of El Paso*, 577 Fed. Appx 327 (5th Cir. (2014); *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir.2001); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). When a § 1983 claim accrues for limitations purposes is a question of federal law. It accrues when the plaintiff has "a complete and present cause of action." *Wallace v. Kato*, 549 U. S. 384 (2007). Therefore, any Denby claim against a defendant that accrued prior to November 3, 2011 is barred from consideration by this court by reason of the applicable statute of limitations.

"Where it is clear from the face of a complaint filed in *forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed, pursuant to § 1915(e)(2)(B). *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). The Court 'may raise the defense of limitations *sua sponte*.' *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999)." *Marshall v, City of Dallas*, 2003 U. S. Dist. LEXIS 12002 (N.D. Tex. 2003).

## Denial of Adequate Medical Care Claim Accrual

Under the Eighth Amendment, prisoners are entitled to adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). It is the denial of medical care or deliberate indifference to an inmate's medical needs that is proscribed by the

Eighth Amendment and enforced by 42 U.S.C. §1983. "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Gamble*, 429 U.S. at 105. To establish such "deliberate indifference," a claimant must at minimum establish that a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. A § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause. *Devbrow v. Kalu*, 705 F. 3d 765 (7th Cir. 2013)(*ie*. when the prisoner received his diagnosis) citing *United States v. Kubrick*, 444 U.S. 111 (1979). The statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known. *Id. at 768*.

    Denby made his first complaint about being injured in a sexual assault on May 30, 2011 while he was examined by a medical department nurse as a walk-in. At that time he complained of finding blood in his stool some three days prior to his visit and related that the last sexual assault had occurred on May 16, 2011.[3] That same day during a Unit Classification hearing, he claimed that he had been anally penetrated during the May 16 incident.[4] Thereafter, following HIV testing and several other visits with medical department personnel, on July 9, 2011 Denby submitted a sick call request complaining of difficulty defecating with pain, swelling, and bleeding from the rectum.[5] Once again on August 26, 2011 after he had been transferred to the Allred Unit, he complained that "he has continued pain & bleeding" related to the sexual assault.[6] Clearly, Denby knew of the sexual

---

[3]     Affidavit of Benjamin J. Leeha, M.D., ECF 19-1, p. 3, ¶¶ 1

[4]     Incident Review Report, ECF 19-4, p. 5.

[5]     *Id* at. ¶ 4; Incident Report, ECF 19-4, p. 7

[6]     ECF 19-2 Nursing Note at p. 37 and Nursing Protocol for Lower Gastrointestinal Symptoms at p. 38 reflecting "sharp and intermittent pain" with "tarry-hard stools" and "alternating diarrhea."

assault by anal penetration that caused his alleged injury on May 16 and was aware that the injury had been causing him trouble with his bowels. While he may not have fully known or appreciated the exact medically identified causal connection between the alleged sexual assault and his bowel complaints, the record clearly reflects that he did mentally make the causal connection between the two. Indeed, that was his very stated reason for seeking examination by the medical staff at both the Clements and Allred Units.

Denby's recognition and attribution of the cause of his bowel discomfort to the alleged May 16, 2011 sexual assault occurred prior to November 3, 2011. From the medical records I find that rather than being consciously indifferent to or callously ignoring his complaints about his bowel distress or the cause of it, the medical personnel on each occasion when they met with Denby they made a diagnoses (ie. analyzed Denby's description of his symptoms and complaints) and prescribed a treatment they deemed appropriate and sufficient. Even if the diagnoses had been wrong, those diagnoses were made were based upon Denby's articulation of his symptoms and complaints. Furthermore, malpractice alone is not grounds for a constitutional claim. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. *Graves v. Hampton*, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

Although Denby's general complaint was that he received "inadequate medical care," each instance of potentially deliberate indifference ceased when he received medical attention. *See Nottingham v. Richardson*, 2012 U.S. App. LEXIS 24894 (5th Cir. 2012); *Gross v. Copeland,* 1993 U. S. App. LEXIS (5th Cir. 1993). Those instances of medical care consisting of the diagnoses and

treatments were all made on or before August 31, 2011, which was more than two years prior to the filing of this suit. Accordingly, I conclude that Denby's claims against the medical personnel of the Clement and Allred Units for denial of adequate medical care are barred from consideration by this court.

### Claim against Eastridge

Eastridge as a nurse practitioner was a medical provider at the Allred Unit. Denby claims that in spite of his awareness of Denby's status as a sexual assault victim and knowledge of his prior medical complaints at his former unit, Eastridge ignored Denby's specific complaints of serious pain and rectal bleeding and instead made only a superficial external exam leading to a mis-diagnosis and treatment for hemorrhoids rather than a rectal injury.

For much of the period from May 16 until August 30, 2011, Denby made intermittent complaints and filed grievances related to his claim of rectal pain and lack of seeing proper medical personnel. But the Martinez Report reflects that on August 30, 2011, Denby complained of rectal pain and bleeding to Nurse Practitioner Eastridge; that Eastridge examined Denby; observed no external injury or damage; but did observe several hemorrhoids for which he did prescribe a hemorrhoidal cream.[7] That diagnosis and prescribed treatment occurred on that date.

Here, the inmate presented himself to the medical practitioner, a personal examination was conducted, a diagnosis was made, and a treatment was prescribed. To the extent that Denby claims that Eastridge's diagnosis was incorrect, or that the prescribed treatment did not alleviate the condition, his claim sounds in negligence. *Graves v. Hampton*, *supra*. Claims of negligence in the diagnosis and treatment of conditions of inmates do not rise to the Constitutional level required for maintaining an action in this court. *Varnado v. Lynaugh*, *supra*.

---

[7] ECF 19-2, p. 45.

8

I find that Denby's claim against Eastridge accrued more than two years prior to the filing of this lawsuit and conclude that his claims against Eastridge are barred by the applicable statute of limitations. Accordingly, I recommend to the District Court that Denby's claims against Eastridge be DISMISSED with prejudice.

<u>Claim Against Tommy Norwood</u>

Plaintiff Denby's complaint against Defendant Tommy Norwood alleges that he failed to directly address Denby's complaints against the medical staff asserted in his TDCJ-provided I-60-complaint forms that his condition required more treatment than merely a hemorrhoidal salve. The Attorney General discloses that at the time of the alleged incidents Defendant Tommy Norwood was employed by TDCJ as the Health Service Administrator for the Allred Unit of TDCJ. In that capacity he was not engaged in direct clinical treatment inmates and he had assigned the duty to respond to the prisoners' I-60's to the staff nurses who were to provide direct clinical treatment to inmates.

The essence of Denby's claims against Norwood is a one hundred-five (105) day delay in his receipt of treatment for rectal pain which he claims resulted from a claimed sexual assault that allegedly occurred on May 16, 2011 while he was housed at the Clements Unit of TDCJ until August 30, 2011 when he was seen by practitioner Eastridge.

Personal involvement is an essential element of a civil rights cause of action. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978) and to the extent a defendant is being sued in a supervisory capacity, '[a] supervisory officer cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability.' *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)*; Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011).

While Denby does not allege he had any direct contact or personal involvement with Norwood with regard to his complaints, diagnosis or treatments, in his capacity as Health Service Administrator of the Allred Unit of TDCJ, it is apparent that Norwood had supervisory responsibility

over the medical providers and staff nurses at the unit level. The Fifth Circuit has held that supervisors can be liable for constitutional violations committed by subordinate employees when supervisors act or fail to act with deliberate indifference to violations of others' constitutional rights committed by their subordinates in the context of the provision of medical care. *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443 (5th Cir. 1994)*; Atteberry v. Nocona General Hospital*, 430 F.3d 245, 255 (5th Cir. 2005); *Pena v. Givens*, 2015 U. S. App. LEXIS 20591, p. 25 (5th Cir. 2015); *Rigsby v. Williams*, 2016 U. S. Dist. LEXIS 5072 (E.D. Tex. 2016).

I find that Denby's complaint against Tommy Norwood is his not having addressed Denby's medical care complaints against the medical staff under his supervision who he claimed was denying him care for the pain, swelling, and bleeding from a rectal tear he sustained as a result of a sexual assault while he was at the Clements Unit before he was transferred to the Allred Unit. By his More Definite Statement (ECF 5), Denby specifically claims that he notified Norwood of the denial of medical care by the nurses. [8]

But as indicated above, I find that all of the events forming the foundation of Denby's complaints against the medical staff at the units over which Norwood had supervision, occurred and accrued more than two years prior to the filing of his suit. Denby makes no claim or showing that those responsibilities extended to a time period after the actions or inactions of the medical staff or would have altered his care. Norwood's supervisory responsibility was coextensive in time to the actions or inactions of the staff members over whom he had supervision. Thus, Denby's claim of lack of adequate supervision by Norwood also accrued more than two years prior to the filing of the

---

[8] ECF 10, p. 2 ("I notified Norwood in writing by I-60 (official request to officials) in those I-60's I notified Norwood that I was being denied medical care for a serious medical condition, namely paid, swelling and bleeding of my rectum, and that my condition was worsening, and at times my rectum became prolapsed causing unbareble (sic) pain, I informed him that medical staff was not giving me treatment.")

suit and is barred by the applicable statute of limitations.

Finally, a supervisor may be held liable if he is not personally involved if the supervisory official implements a policy 'so *deficient* that the policy itself is a repudiation of constitutional rights and is the *moving force* of the constitutional violation.' *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (*emphasis added*). Denby does not allege that Norwood implemented a policy or practice that was a moving force of a violation of his constitutional rights. I find that Denby has failed to show or even plead any policy that was implemented by Norwood that was so deficient that it is a repudiation of any constitutional rights or that any policy was the moving force behind his alleged constitutional violation.

By reason of the foregoing, I conclude that Denby's claims against Defendant Norwood are barred by limitations. Accordingly, I recommend to the District Court that Denby's claims against Tommy Norwood be DISMISSED with prejudice.

### Claim Against Candace Tucker

The essence of Denby's claim against Candace Tucker, as the Director of Nurses at the Allred Unit, was that she was responsible for ensuring that the nurses were doing their jobs, and that by not responding to his I-60s she was deliberately indifferent to his serious medical need. It is clear that Denby is suing Tucker in her supervisory capacity as the director of nurses.

As with the claims against Norwood, I find that all of the events forming the foundation of Denby's complaints against the nurses at Allred Unit over which Tucker had supervision, occurred and accrued more than two years prior to the filing of his suit. Therefore, I recommend to the District Court that Denby's claims against Candace Tucker be DISMISSED with prejudice.

### Claim Against Shaffirs

Denby identifies Defendant Saffirs as "a nurse whom preformed medical/sickcall rounds in 11 building where plaintiff was housed" from the time of his arrival at the Allred Unit until he was

11

transferred out.  His claim against her is that as a "gate Keeper" she withheld his sick call request forms and ignored his requests for medical attention for his bowel condition that was worsening. Denby never filed a grievance naming Saffir.  Denby nowhere identifies any I-60 form or other sick call form or specific sick call incident that nurse Saffirs did not appropriately deliver within the two years next preceding the filing of his lawsuit. I find that Denby has failed to allege a plausible claim under 28 U.S.C. § 1983 against nurse Saffirs that is not barred by the applicable statute of limitations. Therefore,  I recommend to the District Court that Denby's claims against Saffirs be DISMISSED with prejudice.

### Claim against White

By his original complaint, Denby claimed that Defendant Joni White was the Chief of Classification who denied his request for protected custody status after his May 31, 2011 report of the sexual assault by his cell mate 15 days earlier and failed to respond to his later protected custody request after he was transferred from the Allred Unit to the Beto Unit in December 2011. Denby's protective custody claim, if at all, accrued on May 31, 2011 which was the earliest date that notice of the alleged sexual assault first came to Joni White.  Thus, this claim against White is barred by limitations. Therefore,  I recommend to the District Court that Denby's claims against White be DISMISSED with prejudice.

Based upon the foregoing, I recommend to the District Court that all claims by Denby against all of the named defendants be DISMISSED with prejudice and be DEEMED A STRIKE for purposes of the three strike rule. 28 U.S.C. § 1915(g)

### Standard Instruction to Litigants

A copy of this report containing findings, conclusions and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served

with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so ORDERED, this 26th day of April, 2016.

                                                        Robert K. Roach
                                                       UNITED STATES MAGISTRATE JUDGE